IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ALLSTATE INSURANCE COMPANY
    *Plaintiff*,

v.

N-4, INC. ET AL.
    *Defendants*.

Civil Action No. ELH-17-2980

## MEMORANDUM OPINION

In this insurance dispute, plaintiff Allstate Insurance Company ("Allstate") has filed a declaratory judgment action against defendants N-4, Inc. ("N-4"); Dear Management and Construction Company ("Dear Management")[1]; Stanley Rochkind, individually and on behalf of the corporate defendants; and Tyrel M. Pitts. *See* ECF 1 ("Complaint"). The case is rooted in a lead paint suit filed by Pitts in the Circuit Court for Baltimore City against the other defendants here, alleging injury from lead paint exposure in connection with a property owned, maintained, and/or managed by Rochkind. ECF 1-2 (the "Tort Case").

In particular, Allstate issued a Personal Umbrella Policy to Rochkind beginning in June 1988. Allstate seeks a declaration that it has no duty to defend or indemnify Rochkind for any alleged lead paint injuries that occurred on or after June 13, 1999, when the policy excluded coverage for claims arising from lead paint exposure. ECF 1, ¶¶ 12, 13. Moreover, Allstate maintains that in view of the exclusion, and the subsequent termination of the policy in June 2000, Rochkind is responsible for a pro rata share of his defense and indemnity costs. ECF 1, ¶ 14.

---

[1] N-4 and Dear Management are forfeited Maryland corporations. ECF 1, ¶¶ 4-5.

On February 9, 2018, the parties to this case and the parties in two similar federal cases moved to consolidate the three cases for pretrial purposes. ECF 23. The other cases are: *Allstate Insurance Co. v. Uptown Realty Co., et al.*, ELH-17-3288 ("*Uptown*") and *Allstate Insurance Co. v. JAM #32 Corp.*, ELH-17-3293 ("*JAM*"). In those two cases, Da'Quan Roberts, Sha'Quan Roberts,[2] and Martaze Gaines are, like Pitts, plaintiffs in lead paint cases pending in the Circuit Court for Baltimore City. And, they are defendants in the federal cases cited above. (I shall refer to Pitts, Da'Quan, Sha'Quan, and Gaines collectively as the "Tort Plaintiffs"). I granted the motion. ECF 24.

All three federal suits concern Allstate's potential liability for lead-poisoning under a Personal Umbrella Policy (the "Policy") that it issued to Rochkind in June 1988. The Policy provided excess personal liability coverage to Rochkind, who owns and manages residential properties in Baltimore in which the Tort Plaintiffs resided. ECF 28, ¶ 12; *Uptown*, ECF 30, ¶ 14; *JAM*, ECF 27, ¶ 12. On June 13, 1999, Allstate excluded coverage for claims arising from lead paint exposure. ECF 1, ¶¶ 12, 13; ECF 28, ¶ 12; *Uptown*, ECF 30, ¶ 14; *JAM*, ECF 27, ¶ 12. A year later, the Policy was terminated in its entirety. ECF 28, ¶ 12; *Uptown*, ECF 30, ¶ 14; *JAM*, ECF 27, ¶ 12. In Allstate's view, because the exclusion went into effect on June 13, 1999, and the policy was cancelled on or about June 13, 2000, Rochkind "is responsible for a pro-rata allocation of his defense and indemnity costs . . . ." in each tort case. *Id.* ¶ 14.

Now pending is the motion of the Tort Plaintiffs to certify to the Maryland Court of Appeals a question concerning the allocation of damages in certain lead-based paint lawsuits. *See* ECF 31. In support of their Motion for certification (ECF 31), defendants have submitted a memorandum of law (ECF 31-1) (collectively, the "Motion") and an exhibit. *See* ECF 31-2.

---

[2] Hereinafter, because of the common surnames, I shall refer to Da'Quan and Sha'Quan Roberts by their first names.

Allstate opposes the Motion. ECF 36 ("Opposition"). The Tort Plaintiffs have filed a reply. ECF 37 ("Reply").

The Motion is fully briefed and no hearing is necessary to resolve it. *See* Local Rule 105.6. For the reasons that follow, I shall deny the Motion.

## I. Factual Summary

The Tort Plaintiffs filed suit in the Circuit Court for Baltimore City against Rochkind and various corporate entities, alleging injuries from exposure to lead paint at certain residential properties where they had resided. *See Tyrel M. Pitts v. N-4, Inc.*, Case No. 24-C-16-2490; *Gaines v. Uptown Realty Co.*, Case No. 24-C-16-3569 LP; *Roberts v. Wyman Park Co.*, Case No. 24-C-16-949. They asserted claims of battery, negligence, and unfair and deceptive trade practices. ECF 1-2 at 6-17 ("Pitts' Complaint"); *Uptown*, ECF 1-2 at 5-16 ("Gaines' Complaint"); *JAM*, ECF 1-2 ("Roberts' Amended Complaint").

### A. *Pitts* and *N-4*.

On April 27, 2016, in the Circuit Court for Baltimore City, Pitts sued N-4, Dear Management, and Rochkind, individually and on behalf of the corporate defendants. *Pitts*, Case No. 24-C-16-2490; *see also* ECF 1-2. He alleged that he was exposed to lead paint from 1997 to 2001, while residing at 3508 Virginia Avenue, Baltimore, Maryland. ECF 1-2, ¶¶ 3, 8. This property was owned or operated by N-4, Dear Management, and Rochkind. ECF 1-2, ¶ 3.

Because of the underlying suit, Allstate seeks a declaratory judgment as to potential liability, asserting, *inter alia*, that in the event of liability, its share of the pro-rata allocation of liability is limited to 14.51% of any judgment in favor of Pitts. ECF 28 at 6.

### B. *Gaines* and *Uptown*

Gaines filed suit in the Circuit Court for Baltimore City on June 14, 2016, against defendants Uptown Realty Co. a/k/a Uptown Realty Co. Limited Partnership ("Uptown Realty"); Dear Management; Jack W. Novograd, individually and on behalf of Uptown Realty; Charles W. Runkles, individually and on behalf of Dear Management, and Rochkind, individually and on behalf of both corporate defendants. *Gaines*, Case No. 24-C-16-3569 LP; *Uptown*, ECF 1-2. Gaines alleged that he was exposed to lead paint from March 6, 1996 through 2001, while residing at or visiting 2320 Druid Hill Avenue, Baltimore, Maryland. *Uptown*, ECF 1-2, ¶ 3. This property was allegedly owned or operated by Uptown Realty, Dear Management, Novograd, Runkles, and Rochkind. *Uptown*, ECF 1-2, ¶ 3; ECF 1-2 at 2-4 ("Case Information Report").

In *Uptown*, Allstate filed suit against defendants Uptown Realty; Dear Management; Novograd, individually and on behalf of Uptown Realty; Runkles, individually and on behalf of Dear Management; Rochkind, individually and on behalf of both corporate defendants; and Gaines, seeking a declaratory judgment that, *inter alia*, limits its share of liability to 51.4% of any judgment in favor of Gaines. *Uptown*, ECF 1; *Uptown*, ECF 30 at 7.

### C. *Roberts* and *JAM*

Da'quan and Sha'quan filed suit in the Circuit Court for Baltimore City on February 17, 2016, against Wyman Park Co. ("Wyman Park"); Homewood Realty, Inc. ("Homewood"); Stanley Sugarman, individually and on behalf of Wyman and Homewood; JAM #32 Corp. ("JAM"); Dear Management; and Rochkind, individually and on behalf of JAM and Dear Management. *Roberts*, Case No. 24-C-16-949; *see also JAM*, ECF 1-2. Da'quan alleges that he was exposed to lead paint from 1996 through 2002, while residing at or visiting 919 N.

Collington Avenue, Baltimore, Maryland and 1635 N. Spring Street, Baltimore, Maryland. *Id.* ¶¶ 1, 3, 5, 10. Sha'quan alleges that she was exposed to lead paint from 1997 through 2002, while she resided at or visited the aforementioned properties. *Id.* ¶¶ 1, 3, 7, 10. The property located at 919 N. Collington Avenue was allegedly owned or operated by defendants Wyman Park, Homewood, and Sugarman. *Id.* ¶ 3. The property located at 1635 N. Spring Street was allegedly owned or operated by defendants JAM, Dear Management, and Rochkind. *Id.* ¶ 5.

In *JAM*, Allstate filed suit against defendants JAM, Dear Management, Rochkind, and Da'quan and Sha'quan, seeking a declaratory judgment that, *inter alia*, limits its share of liability to 37.2% and 40.4% of any judgments for Da'quan and Sha'quan, respectively, for their alleged lead paint poisoning. *JAM*, ECF 1; ECF 27 at 6, 7.

## II. Proposed Question for Certification

As noted, Allstate seeks a declaratory judgment to limit its liability under the Policy for lead-poisoning claims brought by former residents of Rochkind's properties. ECF 28, ¶ 2; *Uptown*, ECF 30, ¶ 2; *JAM*, ECF 27, ¶ 2. Specifically, Allstate seeks declaratory judgments that (1) the Policy does not cover damages resulting from exposure to lead paint on or after June 13, 1999, and (2) Rochkind is responsible for damages resulting from such exposure after that date. Allstate also seeks a declaratory judgment that caps its liability at its pro-rata allocation of damages, which Allstate specifies for each former resident. ECF 28, ¶ 12; *Uptown*, ECF 30, ¶ 14; *JAM*, ECF 27, ¶ 13.

The Tort Plaintiffs propose the following question for certification, ECF 31 at 3-4:

> What insurance allocation rule does Maryland apply in lead-based paint bodily injury lawsuits where an insurance policy is triggered by an individual's exposure to lead-based paint, but the insurance policy at issue was not in effect for the entire period of the individual's exposure?

To this Court's knowledge, the Maryland Court of Appeals has not addressed the proposed question for certification. But, the Maryland Court of Special Appeals has done so. *See Md. Cas. Co. v. Hanson*, 169 Md. App. 484, 902 A.2d 152 (2006); *Riley v. United Servs. Auto. Ass'n*, 161 Md. App. 573, 871 A.2d 599 (2005), *aff'd on other grounds*, 393 Md. 55, 899 A.2d 819 (2006); *Mayor & City Council of Baltimore v. Utica Mut. Ins. Co.*, 145 Md. App. 256, 802 A.2d 1070 (2002), *cert. granted*, 371 Md. 613 (2002), *cert. dismissed by petitioner*, 374 Md. 81 (2003).

### III. Discussion

#### A. Choice of Law

In Allstate's three federal suits, subject matter jurisdiction is founded on diversity of citizenship. *See* ECF 1, ¶ 6; *Uptown*, ECF 1, ¶ 8; *JAM*, ECF 1, ¶ 8. Allstate asserts that Maryland law governs the legal issues in this case. ECF 36 at 3-4. The Tort Plaintiffs do not contest the point; they assume, without discussion, that Maryland law applies here. *See* ECF 31.

In a contract claim, Maryland courts follow the rule of *lex loci contractus*, applying the substantive law of the state where the contract was formed, unless there is a choice-of-law provision in the contract. *Am. Motorists Ins. Co. v. ARTRA Group, Inc.*, 338 Md. 560, 573, 659 A.2d 1295, 1301 (1995). The Policy does not appear to contain a choice of law clause. And, all of the policies appear to have been executed in Maryland. *See* ECF 1-3; *Uptown*, ECF 1-3; *JAM*, ECF 1-3; *see also* ECF 36 at 3-4. Accordingly, I will apply Maryland law in addressing plaintiff's contract suit. *See Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 696 (D. Md. 2011) ("When choosing the applicable state substantive law while exercising diversity or supplemental jurisdiction, a federal district court applies the choice of law rules of

the forum state.") (citing *ITCO Corp. v. Michelin Tire Corp., Commercial Div.*, 722 F.2d 42, 49 n. 11 (4th Cir. 1983)).

### B. Standard for Certification

Under the Maryland Uniform Certification of Questions of Law Act ("Certification Act"), Md. Code (2013 Repl. Vol., 2017 Supp.), § 12–601 *et seq.* of the Courts and Judicial Proceedings Article ("C.J."), this Court may certify to the Maryland Court of Appeals a question of law "if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling [Maryland] appellate decision, constitutional provision, or statute . . . ." The purpose of the Certification Act "is 'to promote the *widest possible use* of the certification process in order to promote judicial economy and the proper application of [Maryland]'s law in a foreign forum.'" *Proctor v. WMATA*, 412 Md. 691, 705, 990 A.2d 1048, 1056 (2010) (emphasis in original) (quoting Certification Act, § 3 cmt.)).

The Fourth Circuit has endorsed certification of substantial, unresolved questions of state law to a state's highest court, where a certification procedure is available and resolution of the question is necessary to the case. Certification "ensur[es] the correct legal outcome, aid[s] in judicial economy, and manifest[s] proper respect for federalism." *Sartin v. Macik*, 535 F.3d 284, 291 n.6 (4th Cir. 2008).

The role of a federal court when considering an issue of state law is to "interpret the law as it believes that state's highest court of appeals would rule." *Abadian v. Lee*, 117 F. Supp. 2d 481, 485 (D. Md. 2000) (citing *Liberty Mut. Ins. Co. v. Triangle Indus., Inc.*, 957 F.2d 1153, 1156 (4th Cir.), *cert. denied*, 506 U.S. 824 (1992)); *accord Private Mortg. Inv. Servs., Inc. v. Hotel & Club Assocs., Inc.*, 296 F.3d 308, 312 (4th Cir. 2002) (stating that federal court's task in considering an issue of state law is to "predict how [the state's highest] court would rule if

presented with the issue"). Thus, a federal court ordinarily cannot speak with precedential authority on a matter of *state* law. In several procedural contexts, the Supreme Court has invoked the principles of federalism and comity, stating: "Needless decisions of state law [by federal courts] should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).

When deciding whether certification is appropriate, a federal court must undertake a two-party inquiry. First, it must "consider whether the provision's meaning 'may be determinative of an issue in pending litigation.'" *Antonio v. SSA Sec., Inc.*, 749 F.3d 227, 234 (4th Cir. 2014) (quoting C.J. § 12-603)). Second, it must "evaluate whether . . . [the question may be answered] based on a 'controlling appellate decision, constitutional provision, or statute of [Maryland].'" *Antonio*, 749 F.3d at 234 (second alteration in original) (quoting C.J. § 12-603).

Notably, for the purpose of C.J. § 12-603, a decision of an intermediate state appellate court is not a "controlling appellate decision." *Proctor*, 412 Md. at 704, 990 A.2d at 1055l (citing *King v. Order of United Commercial Travelers*, 333 U.S. 153, 160-61 (1948)). But, if the Court of Appeals "has not spoken on the issue, 'an intermediate appellate state court . . . is a datum for ascertaining state law which is not to be disregarded by a federal court *unless it is convinced by other persuasive data that the highest court of the state would decide otherwise*.'" *Id.* at 704, at 1055 (emphasis in original) (quoting *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465 (1967)); *see also Assicurazioni Generali, S.p.A. v. Neil*, 160 F.3d 997, 1002 (4th Cir. 1998) (quoting *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940)). "Persuasive data" exists only if the "decision of a state's intermediate court cannot be reconciled with state statutes, or decisions of the state's highest court, or both . . . ." *Assicurazioni*, 160 F.3d at 1003.

"A federal court cannot refuse to follow an intermediate appellate court's decision simply because it believes the intermediate court's decision was wrong, bad policy, or contrary to the majority rule in other jurisdictions." *Id.* Such beliefs do not constitute "persuasive data."

### C. The Parties' Contentions

The Tort Plaintiffs argue that "[c]ertification is both proper and necessary" to determine "how insurance coverage must be allocated among multiple insurers in lead-paint personal injury cases[.]" ECF 31-1 at 8. They claim that insurance coverage in such cases should be allocated according to the "all sums method." *See generally id.* Under this allocation method, "all insurers whose coverage is triggered are liable for the full amount of the judgment against their insured up to the amount of their applicable policy limits." *Id.* at 3. Like joint-tortfeasors, "[t]he insurers may then litigate among themselves" to determine the "portions of coverage that each should bear, but the injured claimant is first . . . compensated." *Id.*

According to the Tort Plaintiffs, decisions of the Maryland Court of Special Appeals "purport[ing] to adopt" an alternative method—the pro rata rule—in personal injury cases are not controlling, as "the discussion in those cases was purely *dicta* with no precedential value." *Id.* at 9 (emphasis in original). Under the pro rata rule, "insurers must only pay a pro rata share of the judgment based upon the percentage of the applicable time period during which they insured the property[.]" *Id.* at 3.

In the view of the Tort Plaintiffs, the Maryland Court of Special Appeals improperly extended the pro-rata rule from property damage cases to personal injury cases and from asbestos cases to lead-paint poisoning cases. *Id.* at 10-11. And, they conclude that the "Court of Appeals is likely to adopt the all sums rule" for personal injury cases because it is consistent with joint

and several liability, of national concern, and necessary given the realities of lead-based paint personal injury litigation. *Id.* at 17; *id.* at 18-22.

In contrast, Allstate argues that Maryland case law on this question is settled. It rejects the Tort Plaintiffs' efforts to distinguish the Court of Special Appeals cases. *See* ECF 36. According to Allstate, the Court of Special Appeals has applied the pro rata approach to continuous injuries, including lead-paint exposure, irrespective of the type of damage. *Id.* at 8-9. That is, when applying the pro rata approach, the court has not recognized Tort Plaintiff's distinction between property damages and personal injuries or between asbestos cases and lead-based paint injury cases. *Id.* Finally, Allstate argues that that the Court of Appeals is unlikely to adopt the all-sums method, given Maryland's well settled law on the use of the pro rata rule in continuous injury cases. *Id.* at 14.

### D. Analysis

The Maryland Court of Special Appeals has decided three cases addressing the use of pro rata allocation in continuous injury cases. First, in 2002, the court considered how to allocate liability among several insurance companies for property damage resulting from the installation and presence of asbestos-containing insulation in a building. *Utica*, *supra*, 145 Md. App. at 308-14, 802 A.2d at 1100-04. The court adopted the pro rata method because it "conforms with the realities of long term property damage resulting from asbestos in buildings." *Id.* at 309, at 1102. The court said, *id.* at 311, 802 A.2d at 1103:

> "At the time [the insured] purchased each individual insurance policy, we doubt that [it] could have had a reasonable expectation that each single policy would indemnify [it] for liability related to property damage occurring due to events taking place years before and years after the term of each policy . . . . [T]here is no logic to support the notion that one single insurance policy among 20 or 30 years worth of policies could be expected to be held liable for the entire time period."

(quoting *Public Service Company of Colorado v. Wallis and Companies*, 986 P.2d 924, 940 (Colo. 1999)) (alterations in original).

Moreover, the court "disagree[d] with . . . the 'all sums' and 'joint and several approach' *in general*." *Id.* at 310, at 1102 (emphasis added). The court's logic turned on the poor fit between the all-sums method and the nature of long-term and continuous injuries. These features are not unique to property damage resulting from asbestos. Rather, they are common across different kinds of injuries, including lead poisoning. Indeed, the court concluded that, "[t]o compress *long-term damage of a continuing nature* into a single policy period, which would effectively be called for under the 'joint and several' or 'all sums' approach, is 'intuitively suspect.'" *Id.* at 311, at 1103 (emphasis added) (quoting *Olin Corp. v. Insurance Co. of North America*, 221 F.3d 307, 322-23 (2d Cir. 2000)).

However, the Tort Plaintiffs argue that "the Court took pains to constrain its ruling to a specific context: property damages cases." ECF 31-1 at 10. They finely parse the *Utica* opinion to carve a narrow holding from the court's expansive reasoning. For example, they make much of the court's statement that all-sums allocation method is "'incompatible with the injury-in-fact/continuing trigger that is applicable *to the case at bar*.'" ECF 31-1 at 12 (Tort Plaintiffs' emphasis) (quoting *Utica*, 145 Md. App. at 309, 802 A.2d at 1101); *see also* ECF 31-1 at 10. According to the Tort Plaintiffs, this phrase should be read for all its worth, and pages of the court's carefully reasoned analysis should be cast aside.

But, the court said nothing to justify such a narrow reading of its opinion. Furthermore, it said nothing to support the Tort Plaintiffs' distinction between property damage cases and personal injury cases. Rather, as the Tort Plaintiffs concede, the court "state[d] its disagreement with the all sums approach in general." ECF 31-1 at 10; *see also Utica*, 145 Md. App. at 310,

802 A.2d at 1102 ("We disagree with . . . the 'all sums' and 'joint and several approach' in general.").

More important, the Court of Special Appeals applied the logic of *Utica* to lead-poisoning injuries in 2005. In *Riley*, *supra*, 161 Md. App. at 587-94, 871 A.2d at 608-12, the court considered an insurer's liability under a policy for lead-induced injuries spanning multiple policy periods. "Maryland law," the court concluded, "dictates that the judgment be allocated pro rata among the policies based on their time on the risk." *Id.* at 592, at 611. By contrast, the all-sums method "runs counter to the pro rata by time-on-the-risk allocation method adopted in continuous injury cases in Maryland." *Id.*

The Tort Plaintiffs maintain that *Riley*'s application of *Utica* to lead-based personal injury cases was "an enormous, unwarranted, and unexplained leap forward." ECF 31-1 at 10. But, the court's reasoning is plain. Like property damage resulting from the use of asbestos, personal injury resulting from exposure to lead is a continuous injury. In such continuous injury cases, "liability is pro rated according to each policy's time on the risk because it is only fair . . . that policies indemnify the insured for those injuries sustained when the policy was in effect." *Id.* at 593, at 611 (citing *Utica*, 145 Md. App. at 310-14, 802 A.2d at 1102-04).

In addition, the Tort Plaintiffs characterize *Riley* as nothing more than dicta. But, even if they are correct, the Court of Special Appeals reached the same conclusion the following year in another lead-paint case. *See Hanson*, *supra*, 169 Md. App. 484, 902 A.2d 152. There, the court stated that in *Utica* it had "specifically rejected the all-sums approach." *Id.* at 519; *see id.* at 167 (citing *Utica*, 145 Md. App. at 311, 802 A.2d at 1103). Therefore, it once more concluded that the pro rata allocation, not the all sums approach, applies when allocating liability among insurers in lead-poisoning cases. *Hanson*, 169 Md. App. at 519, 902 A.2d at 167.

The Fourth Circuit has also concluded that Maryland case law requires application of the pro rata method in lead-poisoning cases. In *Pennsylvania Nat'l Cas. Ins. Co. v. Roberts*, 668 F.3d 106 (4th Cir. 2012), the Court stated: "In lead paint or continuous trigger cases such as this one, Maryland courts engage in a 'pro rata by time-on-the-risk allocation' of liability." *Id.* at 113 (quoting *Hanson*, 169 Md. App. at 512, 902 A.2d at 168, quoting *Riley* 161 Md. App. at 592, 871 A.2d at 611)) (citing *In re Wallace & Gale Co.*, 385 F.3d 820, 835 (4th Cir. 2004) (holding that after *Utica*, "the pro-rata allocation method is correct under Maryland law")). "Applying Maryland law," the Court therefore affirmed the lower court's use of the pro rata method. *Roberts*, 668 F.3d at 111.

In light of the unambiguous case law, I see no basis for certification. The Tort Plaintiffs have not presented "'persuasive data that the highest court of the state would decide otherwise.'" *Assicurazioni*, *supra*, 160 F.3d at 1002 (quoting *West*, *supra*, 311 U.S. at 237). The Tort Plaintiffs do not present evidence that the decisions of the intermediate courts are irreconcilable "with state statutes, or decisions of the state's highest court, or both[.]" *Assicurazioni*, 160 F.3d at 1003.

To be sure, the Tort Plaintiffs cite other jurisdictions that apply the all sums approach, ECF 31-1 at 18, as well as policy considerations in support of it. ECF 31-1 at 19-22. But, even if these arguments are valid, a federal court's belief that "the intermediate court's decision was wrong, bad policy, or contrary to the majority rule in other jurisdictions" is not persuasive data. *Assicurazioni*, 160 F.3d at 1003. That is, such considerations do not justify certification, in light of three decisions on the matter issued by the Maryland Court of Special Appeals.

### IV. Conclusion

For the foregoing reasons, defendants' Motion shall be denied. An Order follows.

Date: October 22, 2018 /s/
Ellen Lipton Hollander
United States District Judge